Thank you very much. And Mr. Nooter, you have reserved two minutes for rebuttal, so that gives you eight out of the gate, and the floor is yours. Thank you, Your Honor. Good afternoon. May it please the Court, my name is Daniel Nooter. I represent Mr. Frank Noeson. Several days before conducting a video interview with the primary victim witness, the government wrongly and recklessly led her and her mother to believe they were the targets of a sex trafficking ring, an allegation my client was unable to effectively address at sentencing because the government failed to provide the video or even a transcript of it to my client or his trial attorney. Well, I mean, there had been a review of the video before the guilty plea, right? Yes, over 14 months beforehand, but as this Court has repeatedly noted, the question about the timing and how compliance needs to be done to comply with Brady is a functional practical analysis that looks at whether you can make effective use of the information. Well, the defense counsel knew that the government was submitting the video to the sentencing court again. The sentencing court referred to it in his remarks at sentencing. I mean, defense counsel could have asked for a hearing, could have asked for an opportunity to submit, to contest it. Well, I believe the defense attorney did specifically contest those allegations. It even says in the pre-sentence investigation report that he contests it. He contests the information about the knowledge of the age. And rather than have a hearing, what the government did was try to submit this victim interview in lieu of a hearing. Did the defense counsel ask for a hearing? I don't recall that he specifically asked for a hearing, but specifically with respect to the Brady issue. I don't understand if he reviewed it once and the government then puts out a letter saying we're giving this to the court in connection with sentencing. If he thinks he doesn't remember what was on the video, there's certain aspects of it that are in the pre-sentence report that he thinks might be relevant to sentencing or contradicting the video, all he has to do is ask the government to view it again, right? There's no definition of suppression or ex parte in the history of the circuit that would comply with what you're arguing here. I absolutely disagree, Your Honor. All right. United States v. Augers, the Supreme Court case, 427 U.S. 97, pinpointed 107, is absolutely specific that there is no onus on the defendant. Even Judge Nathan of this court in the – shortly before she was elevated to this court in the famous United States v. Nijad. How is it a Brady violation if it was disclosed? But it wasn't disclosed. My client – my client himself has never seen any – The defense counsel did not have the chance to see it. He had a single opportunity 14 months prior to sentencing. Isn't that disclosure? That's not disclosure, Your Honor. It absolutely is not. And, again, I want to just give you a few cases. So what's the best case you have with circumstances resembling these that would say that's not disclosure? When the item was not only made available, but actually viewed. Because the – because the touchstone, which is – in case – I'll give you a few citations in a moment. But the touchstone that's repeatedly referred to by this Court is whether you are able to – whether make effective use. So in numerous cases – so – How much more effective use can it be if you reviewed it? He reviewed it, right? Because – because this was – this was some nine months before he even knew what the allegations – Again, suppose you have physical evidence. Suppose the government sees this physical evidence and makes it available to the defense, and there's something potentially exculpatory in the physical evidence. And the defense lawyer comes and looks at it, and then it comes up at sentencing, and, you know, the judge relies on some portion of the physical evidence, and the defense lawyer says nothing. Because you can't – you can't know, you can't see the future about what is necessarily going to be relevant 14 months down. There was no basis for which the – Well, why – why can't you do – why can't you – Because – Why can't a lawyer review a video or a piece of evidence, take notes as needed, and then use that in connection with sentencing or in connection with a motion to withdraw a guilty plea? Because with respect to some of these specific allegations, he didn't know that those allegations were even going to be raised yet. They weren't going to the elements of the offense, which is all he was looking at at that point. They were going to additional allegations that were not yet made until nine months later in the pre-sentence investigation report. But, moreover, I really want to point out for the case of – I may mispronounce the name, but I'll give you the citation. It's Licca v. Portuondo. It's – but the citation is 257 F. 3rd, 89, Second Circuit, 2001. This is really important for two reasons. One is that the Court makes it clear that the timing and manner of the disclosure needs to be looked at functionally. It's not simply a matter of whether there was – because there was – No one's disputing that. I guess – Sure. There seems to be some disagreement as to whether a lawyer who had access to a video in advance of a guilty plea has been functionally denied access or – Sure. And I think the second part of this, I maybe should have started with this, is really the main point. What the Court noted that the defense counsel also bore some responsibility in failing to be able to use this correctly, but noted that those errors were, quote – I'm reading now from – this is Pinpoint 100 – quote, precipitated by the prosecution's failure to discharge its duty under Brady. In any event, the prosecution is in no position to fault the defense for cutting corners when the prosecution itself created the hastiest – I don't think anyone's accusing the defense of cutting corners. I mean, you're asking us to presume that defense counsel was prejudiced by not having a copy of or renewed access to this video. But there's nothing in the record to indicate that the defense counsel felt that way. Well, the – Am I right? We don't have a situation where this is an ineffective assistance. The counsel claim where a lawyer has been able to say why they were or were not able to take advantage of a particular piece of evidence. Well, there's no ineffective assistance counsel issue now for – I mean, whether there may or may not be in 2255. That's not before this Court. There would have to be an effective assistance, I think, for you to win. No. I don't – again, I don't think that's true at all, Your Honor, because, again, the point here is that the facts on which the district court relied in sentencing my client were wrong. They were objectively wrong, as the video would have pointed out. They did or – the video did or did not. I mean, don't say would have. Right? The defendant has an absolute right to draw the Court's attention to the points that demonstrate that the assumptions on which he's being sentenced are wrong. And, again, saliently, there was no basis that the Court had even – or, excuse me, that the Western District – But what prevented defense counsel from objecting or appraising this as a factual issue? I don't – you know, I really don't know. I, of course, was not – was not the defense counsel. But the salient issue is that the prosecution had no lawful right to restrict my client's access to this by only allowing him to watch it the one time in the first  That was all the time, especially before the digital age. It used to make all types of discovery available for inspection, whether it be physical evidence, whether it be boxes of documents from a search. All those things were made available. Nobody ever argued that by not making a copy of it that somehow you're violating either Rule 16 or Brady or any other obligation. But that changed with the passage of the Due Process Protections Act, Your Honor, in which Congress decided that they were unsatisfied with the way that prosecutors were satisfying or failing to satisfy their Brady and required the courts to police this, first by having this 5F order. I understand. I'm familiar with 5F, but I don't think there's any case that says the government doesn't satisfy its obligation by making evidence available instead of – you know, this was a juvenile's interview. I presume that was the reason why they didn't make a copy of it, that it was a juvenile. But the statute – and the statute in question is 18 U.S.C. 3509, subsection D, specifically goes to the very question of how you are supposed to treat evidence when there is a child victim. And it absolutely makes it clear that nothing about that restricts the access of even the defendant, but certainly defense counsel, to that. And if the government wants to restrict it, there are affirmative steps it must take in seeking a protective order for which the defendant and his counsel will have the ability to respond, and that is 18 U.S.C. 3509, subsection C. And it's subsection D that says otherwise you cannot restrict this. So it's in the statute, Your Honor. I see I'm over my time. If you have any more questions for me now, otherwise I will speak with you in rebuttal.  All right. Thank you very much, Mr. Nutter. I will now hear from Ms. Lee for the government. Good afternoon. May it please the Court. My name is Tiffany Lee, and I represent the United States. This Court should dismiss the appeal as to the length of the sentence and the term of supervised release. Mr. Nelson's claims do nothing to bar the appellate waiver from being enforced under the circumstances the appellate waiver was knowingly, willingly, and voluntarily entered into. I want to make a couple of points to Mr. Nelson's comments about his ability to use the video. Before you do that, I just want to take a step back with respect to the exceptions to the appellate waiver. I just want to make sure. It seemed like the government was suggesting in its brief, and you can correct me if I'm wrong, that you wouldn't disagree with the idea that Brady applies to sentencing. If there's something exculpatory that the government has in connection with a sentencing issue, that Brady would cover that. Do you agree with that? I would agree that Brady would cover that. All right. And then the second issue is, I think before another panel, I think it's called Mactos, which was referred to in the reply brief. The panel is considering whether or not there should be some general miscarriage of justice exception. So there's at least the possibility that if there is, I know you're addressing whether or not there is a Brady violation, but if there was a Brady violation, at least that panel may suggest, may hold, that that would fall within an exception to the appellate waiver, right? That is true. And in addition to that, we don't know what the Supreme Court might say in Hunter v. United States along the same lines in terms of carving the miscarriage of justice exception.  So let's assume for present purposes that it could qualify. If there was a Brady violation in connection with sentencing, it could qualify. Let's assume that. And your position is there was no Brady violation. Is that correct? My position is that this was impeachment material at best in terms of that would possibly be used against the victim. And under Ruiz, the Supreme Court has already stated that there is no constitutional right to impeachment material prior to a plea, entering a guilty plea. But that said, there was no... I mean, I think they're suggesting that it was the wrong, that it was more than just impeachment material, that with respect to some of the allegations in the pre-sentence report that the video shows, based upon the statements made by the victim, that it wasn't him, that it was a person of a different ethnicity. I think it might go to credibility, determination in terms of her description or her recollection in terms of who she was talking to online. But the fact of the matter is, we landed on victim two through the search of Mr. Nosen's own phone and through his Snapchat account, which led to her images appearing on that account. And she didn't know anything about who she was talking to. She said she thought the guy was Frank from Ohio, 20 years old. Other than the name Frank, the other things were not accurate as well. So, you know, as to her descriptor of the defendant, that is, I think, fodder for impeachment in terms of her ability to recall who it was that she was communicating with. But the fact of the matter is here, but even assuming it is a Brady violation, yes, then if this court were to adopt a miscarriage of justice exception, it could conceivably fall under the right circumstances as being an exception to imposition of the appellate waiver. But here there was no Brady violation. The fact of the matter is he was given the opportunity to view the forensic video. The argument is that counsel viewed it nine months earlier or 14 months earlier before the issues were really clarified and didn't have a chance to review it again or to address the court about discrepancies. How do you respond to that? I respond that he was given the opportunity. He was asked that sentencing at Appendix 95. Both his counsel and himself, Mr. Nossen personally, or do you have any objections to the facts or calculations as outlined in the pre-sentence report? And there are paragraphs in the pre-sentence report that refer precisely to victim number two, who is the main victim here. And I would note that, you know, he viewed the video, but not only that, when they to the terms, which were that it was between September of 22 to March of 23 when he was communicating with victim two. There appears to be a little lack of clarity as to when she told him that she was only 17. Does the record indicate that he sent any materials after he learned that she was 17? I don't. It's not quite clear. It is just clear by his admissions that he agreed that he had received images and that he knew those images. Not just images, but child pornography.  So he knew, like, something that the minor was under 18. Can you just address Mr. Muir's point today that the government is not allowed to restrict in the sense of not providing a copy of the video to defense and just making it available for inspection? He cited a statute. What's your response to that? My response to that is, had defense counsel asked, or we would have negotiated something, it's generally, I believe, our practice when we're dealing with evidence, particularly involving children, that we just invite counsel to come and take a look at it. It's, like, no different with child sexual abuse material. We would have them come in and take a look at it. But had counsel asked, perhaps we could have agreed to, okay, we'll do a transcript. We'll do something in between, short of the full video. That never happened here. Was there anything stopping him from reviewing it again in connection with the sentence? He could have gone in and reviewed it as many times as he wanted. No. He didn't ask to see it again? And, you know, this was specifically addressed in the government sentencing. We referred to, hey, we're providing the district court this video, which counsel came in in December of 22 to take a look at. You know, he could have objected then and said, no, I believe it's not relevant or the court should not view this material or consider it. There could be an ineffective assistance claim down the road that counsel should have asked for another look or remembered what he'd already seen in light of what was in the pre-sentence report. Would you agree with that? I would agree. It's unclear from this record. All we know from this record is he was given the opportunity, did not oppose its submission. And I would note that he ---- You agree that a claim could be made. If you're not conceding that it would have merit. Correct. That's correct. Could you address the 30 years of supervised release? The probation department recommended five, I think. 30 seems a bit high. However, Your Honor, when it comes to substantive reasonableness, when we're dealing with this, the district courts basically said that it recognized that it was imposing a longer term, but it felt that it was necessary for Nossen's assistance to transition back to society. I think basically the theme of the district court sentencing was what a tragedy this was because there were two versions of Mr. Nossen offered, one that he was a great teacher, a great coach, a great community member, and the fact that he did this with two victims over a course of period of time and things that were damaging to young victims. So based on all of that, this Court has always said there are no magic words when it comes to sentencing so long as you believe that the district court did consider everything and, you know, waived the sentencing factors as it is permitted to do. If we find the appellate waiver, is it forcible, that would be included in the appellate waiver also, right? That is correct, Your Honor. So for the remainder of the time, with respect to plain error review of the two special conditions which are at issue, the government believes that Mr. Nossen has not established plain error. There was a reasonable, even if you're looking at from the abuse of discretion standard, there was a reasonable basis in terms of the ordering that he participated in the substance abuse program and while during that program that he not partaken in alcohol. And then the second in terms of incurring debt, he was ordered to pay a significant restitution and the government submits that this was not an improper delegation of judicial authority. The courts, you know, time and again have ordered defendants not to incur additional debt and it's actually probation that has the ability to grant relief. Finally, the government does agree that a limited Mariana remand is in order in that the district court did not orally pronounce the typical standard conditions of supervised release. Unless there are any further questions, the government rests on its grief. All right. Thank you, Ms. Lee. We'll now hear from Mr. Nutter for two minutes of rebuttal. Thank you, Judge Sullivan. I want to, if we can just look at pages 22 and 23 in the appendix, this is the rule 5F order because I think it really speaks to this question that's gone back and forth about what the government needs to do. Did you say those pages are not? The page numbers 22 and 23 of the appendix is the rule 5F order. I know we've all seen many rule 5F orders in the last few years, but in the paragraph on page 23, it discusses what the government needs to do if they believe a disclosure would compromise victim rights. And it doesn't simply allow the office, the U.S. Attorney's Office, to make its own rules. It says that there needs to be an application to the court for a modification of its obligation. The problem is there was a disclosure. I mean, you won't accept it, but there was a disclosure. Defense counsel went in and saw it. Again, you're arguing that there should have been a sua sponte further disclosure at the time of sentencing. I feel that repeatedly disclosure means more than you get, than you hold something up for 55 minutes and get to. Is it plain error review? I don't think it's plain error because I don't think it be, I don't think this became ripe until I was able to finally get a transcript in September of, you know, even looking at this, I would have to take parts, sometimes 20 minutes apart in the actual video, and put them together to figure out this chronology. And you can't do that when you're just viewing it through. You can't take notes? Well, yes. I did. I did obviously take notes. Right. So, I mean. But I didn't transcribe it. Without a transcript, you have no meaningful disclosure and no meaningful use of the transcript. So I think what you just said. I would, I would, I would address, I would cite Judge Nathan's long discussions of what happened in that knee job. I just didn't get the citation for it. Don't worry about that. We know the case. Yeah. But I'm not sure why that was disclosed. Because that's another case where there was finally technically disclosure on the fifth day of trial, but it was buried among so many other things that it made it effectively impossible. And Judge Nathan's point was you can't just do this minimum possible and then. This would be the first time in the history of the United States a Federal court has found a Brady violation where the defense lawyer actually, the government made the evidence available and the defense lawyer reviewed it. This would be the first time in the history of the country that I would be aware of. I don't think that's. Which case do you have where the government made it available and the defense lawyer reviewed it and the court said this is a Brady violation for lack of disclosure? That's effectively, Judge Yonker, that's just not the case. In that Pordenado case, 257 F. 3rd 89, there was disclosure there, and the defense counsel failed to make effective use of the disclosure. But there was disclosure, but it was done so close that the court said, you know what, we're going to excuse. We don't have that issue here. The government made this available the whole time. It was available for inspection and was reviewed, as you noted, 14 months before the sentencing. So we don't have that issue where it was late and there was not an ability to make effective use of it. But the provision you cited in the order here deals with when the government decides it's not going to disclose something at all. They have to go to the court and get some kind of ruling. If something is under Rule 16 or some other discovery obligation, they think for whatever reason they can withhold it. That's what that refers to when you file that order. What Pordenado is saying, Your Honor, is that it's not a question of the timing. It's a question of the pragmatic effectiveness. That is what the core holding of that case is on when the disclosure has to be done. So if it's so, yes, most of the time it's when it's made so late that it's ineffective. But here when it's made 14 months earlier before you even know and can reasonably anticipate what some of these new allegations are going to be. But again, the lawyer is in a position to know whether he needs to get another look at this or even a copy. But he didn't do it. We are to presume that that is improper. That's what you're saying? Well, what I'm saying, and again, this Pordenado case goes to this, is that the defense counsel would never have even been in this position in the first place had the government provided the material as they were required to do, not just allowing him to view it once, but they were required to either provide it or to seek a court order. And because they did neither of these, he was now put into this position. And what Pordenado says is we're not going to blame defense counsel when they're put into this position, even if they could have done better, which defense counsel in Pordenado could have done. You know, this Court says the defense counsel wondered. You're arguing a Brady violation, right? I am arguing a Brady violation. But if I could very, very briefly. You're saying Brady requires not only disclosure, it requires a copy. I think disclosure in this context where they're relying essentially on a video interview to be essentially an ersatz fatigo hearing, I think at the very least you need a transcript of what this information is that's being provided to the Court so that the client knows what the basis of his sentence is and can make objections. I'm not sure what prevented defense counsel from just saying I better take another look at this thing. Perhaps he should have done so, but it doesn't take the onus off. Maybe they were both wrong, but the government was also wrong in violating Brady. If I can very briefly speak to the appeal. You're saying that this is a Brady violation because the government didn't provide a copy of this. But if the government had run to the Court and said we want a protective order that will not allow a copy to be produced, that would be a violation of Brady? No. It would not be a violation if they had sought a protective order. Well, we don't know whether or not the judge would have given the protective order. They might have said, well, why do you need this? Can you just redact the person's name, you know, and otherwise give this? We don't know how the judge would have ruled had they actually followed the procedures that they were supposed to. Because, again, the transcript which you have does not reveal any child pornography. It doesn't do – it's precisely just the same kind of testimony that the witness would have to provide in open court had there been a Fatico hearing. There's nothing about this that is – needs to be protected from defense counsel except for maybe the name, which, again, can be redacted. So it's not clear that the district court would have even granted the protective order, certainly to the limit that the U.S. Attorney's Office is saying that you can only watch this. But if I can very briefly speak, because I didn't, to the appeal waiver, because I know that that was an issue of Judge Bianco, two things quickly. First, it is an established exception to the appeal waiver when the government breaches its obligations. And certainly the Rule 5F order establishes, at least I believe, the Court seems maybe – this panel seems maybe not to agree with me so far, but that the government's conduct at least represented a breach of what was in this Rule 5F order. But, again, I'm trying to understand why. I mean, generally the exceptions to the enforceability of an appeal waiver go to the voluntariness of the plea. And you're not challenging the voluntariness of the plea, right? There are something like six or seven or eight enumerated exceptions that this Court has recognized. And one of them, in Gomez-Perez, but itself going further back to Rosa in 1997, is where the government itself creates a breach of its own obligations. That's one of the four that was enumerated in Gomez-Perez, although noting that it was supposed to be a non-exhaustive list. But since then, there have been others. La Junez, just three years ago, held that when a defendant is deprived of his right to allocute at sentencing, this also defeats an appeal waiver. As Judge Bianco noted, this Matos case is pending. And I think if there is a miscarriage of justice exception, the approach that the Court takes in its en banc opinion in Hahn, the citation to which is in the reply brief, is instructive because that takes the fourth prong of the plain error test to look at what is or is not the kind of public interest. Even this Court in the United States v. Rigi, for example, has said that we look at the whether there's a public – let me just get the quote so that I'm not – but that where the issues involve impacted public interest, enforcing a waiver, quote, may itself irreparably damage the Federal courts. That's in Rigi 649F3rd 143, pinpointed 148. This Court itself has acknowledged that there are – when there are compelling public interest issues, then that is an independent reason for the Court to resolve these issues regardless of what the litigants may or may not have agreed to. And here, when the Due Process Protection Act was passed by Congress explicitly because Congress has decided that courts – that prosecutors are inconsistently understanding what their Brady obligations are and are inconsistently conforming to what these obligations are, this is clearly the kind of issue in the public interest that the parties should not be able to withhold from the accountability that Congress intended simply by means of an adhesion clause in a plea agreement. All right. Well, we've gone way over, but we will certainly consider all this in addition to the briefs. We will reserve the decision. Thank you both. Thank you, Your Honor.